RENDERED: JULY 2, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0139-MR


THERESA HOCKENSMITH AND
DEBORAH CONWAY                                             APPELLANTS


|        | APPEAL FROM FRANKLIN CIRCUIT COURT |
|--------|---|
| v.     | HONORABLE PHILLIP J. SHEPHERD, JUDGE |
|        | ACTION NO. 22-CI-00635 |


KEVIN ANDREW HOCKENSMITH,
INDIVIDUALLY AND IN HIS
CAPACITY AS CO-EXECUTOR OF
THE ESTATE OF MARY ANNE
HOCKENSMITH, DECEASED; ANNE
HOCKENSMITH NOVY; GENA F.
HOCKENSMITH GUSTIN; GENE
NOVY; HOCKENSMITH
INVESTMENTS, LTD; JAMES
MUCCI; JENNIFER M.
HOCKENSMITH; JOHN F.M.
HOCKENSMITH, JR.; JUDITH
HOCKENSMITH; KATHRYN
HOCKENSMITH MUCCI; MARK
HOCKENSMITH; MARY SUSAN
OWENS; ROBERT OWENS; AND
STEPHEN M. HOCKENSMITH                                       APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND MᴄNEILL, JUDGES.

MᴄNEILL, JUDGE: Theresa Hockensmith and Deborah Conway ("Appellants")

appeal from the Franklin Circuit Court's final judgment enforcing a settlement

agreement. For the reasons below, we affirm.

**BACKGROUND**

This is a dispute among the heirs of Mary Anne Hockensmith's estate

over the management and control of two farms and an investment partnership.[1]

The parties were ordered to mediate, and following two full days of mediation,

emerged with the framework of a settlement agreement, a two-page written

document titled "Beginning Settlement Terms Outline." On a separate piece of

paper attached to the document were the signatures of all parties.

The Beginning Settlement Terms Outline was then incorporated into a

formal "Mutual Release and Settlement Agreement" and circulated among the

parties. Concerned that not everyone was willing to follow through on the

---

[1] One of the farms is in Woodford County and the other in Franklin County. The action was originally filed in Woodford County but was transferred to Franklin County after the Woodford Circuit Court, upon the parties' motion, found Franklin County the more appropriate venue. Subsequently, the Franklin Circuit Court transferred Count I of the complaint, a request to partition the Woodford County farm, back to Woodford County, determining that, pursuant to Kentucky Revised Statutes 452.400, actions for the partition of real property must be filed in the county where the real property is located.

agreement, several parties (plaintiffs below) moved to enforce it. The circuit court held a hearing on the motion to enforce and allowed the parties to be heard. Of those who spoke, most generally accepted the Mutual Release and Settlement Agreement as representative of the agreement reached in mediation, with some minor edits. Several, including Appellants, challenged the legitimacy of the mediation proceeding, claiming it was coercive.

Following the hearing, the court expressed its intention to enforce the agreement, but allowed the parties to submit any objections, proposed revisions, or proposed agreements for consideration. Thereafter, the court entered a final judgment, incorporating the Beginning Settlement Terms Outline and the most recent version of the Mutual Release and Settlement Agreement. As grounds for enforcing the settlement agreement, the circuit court made the following findings:

> The Court finds in no uncertain terms that a binding settlement agreement was reached at the Mediation. The Court further finds that counsel for the parties diligently worked in good faith to incorporate the terms of the parties' agreement into the customary final document that spelled out the details of the agreement and provided for mutual releases of liability.
>
> The then-counsel for the parties met and conferred and drafted a mutual release and Settlement Agreement that incorporated the terms and conditions of the [Beginning] Settlement Terms Outline reached at Mediation, which provided all the necessary details for implementing this settlement. The Court . . . . finds that the proposal submitted by counsel truly and accurately

-3-

reflected the agreement reached at Mediation, and that it is fair and equitable to all parties.

. . . .

The Court believes that the parties had a full and fair opportunity to participate in the mediation process, to be represented by counsel during that process, and that a meeting of the minds was reached in the end as to all material and essential settlement terms.

. . . .

The Court recognizes that certain participants in the Mediation are now experiencing "buyer's remorse" and would like to disavow certain aspects of the Settlement Agreement[;] no party has presented any legally cognizable basis for this Court to reject or materially modify the agreement that was reached in Mediation. It is beyond doubt that if the Court fails to enforce this Mutual Release and Settlement Agreement, this case will never be resolved and the parties will bankrupt the estate and perhaps themselves in the pursuit of grievances that are based in a lifetime of family disputes and discord, and now almost 10 years of conflict regarding the management of their Mother's guardianship in District Court, her Probate Case in District Court, the management of the family farms, and this litigation. The Court will not become the forum for adjudication of these family grievances.

This appeal followed.

## STANDARD OF REVIEW

The construction and interpretation of a settlement agreement, a type of contract, are matters of law for the court. *Spot-A-Pot, Inc. v. State Resources Corp.*, 278 S.W.3d 158, 161 (Ky. App. 2009). Accordingly, we review *de novo* the

circuit court's determination that the parties had a binding settlement agreement. We review the court's factual findings, however, for clear error. CR[2] 52.01.

## ANALYSIS

We begin by noting that Kentucky public policy encourages the settlement of litigation through negotiation and mediation. KRS[3] 454.011; *Nuckols v. Nuckols*, 293 Ky. 603, 169 S.W.2d 828, 829 (1943) ("Compromise agreements are favored by law[.]"). "An agreement to settle legal claims is essentially a contract subject to the rules of contract interpretation. It is valid if it satisfies the requirements associated with contracts generally, *i.e.*, offer and acceptance, full and complete terms, and consideration." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002) (citations omitted). Further, "[i]t is the settled law in Kentucky that one who signs a contract . . . is bound by its provisions, unless he is misled as to the nature of the writing which he signs or his signature has been obtained by fraud." *LP Louisville East, LLC v. Patton*, 651 S.W.3d 759, 774 (Ky. 2020), *as modified on denial of reh'g* (Apr. 29, 2021) (citation omitted).

The circuit court determined that the Beginning Settlement Terms Outline was a valid contract signed by all parties. On appeal, Appellants challenge

---

[2] Kentucky Rules of Civil Procedure.

[3] Kentucky Revised Statutes.

the enforcement of the settlement agreement on three grounds: (1) the Beginning Settlement Terms Outline was not sufficiently definite to create a binding contract; (2) the settlement agreement should be set aside because it was obtained through coercion; and (3) the circuit court lacks authority to enforce settlement provisions pertaining to claims outside of its jurisdiction.[4]

Appellants' first contention, that the Beginning Settlement Terms Outline was not sufficiently definite to create a binding contract, is not preserved for our review. It does not appear that they ever raised this issue to the circuit court. Appellants voiced numerous objections to the enforcement of the settlement agreement below, both in court filings and at the October 16, 2024 hearing, but never argued that the Beginning Settlement Terms Outline lacked essential or material terms or was not sufficiently definite to form a valid contract. The general thrust of their argument was that they felt coerced into signing the agreement and

---

[4] We would note that Appellants' brief lacks *any* preservation statement indicating that their issues on appeal are preserved and in what manner they were preserved, as required by Kentucky Rules of Appellate Procedure (RAP) 32A(4). Our rules require a preservation statement to assure the reviewing court that "the issue was properly presented to the trial court and therefore, is appropriate for our consideration." *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012). When a party fails to abide by the Rules of Appellate Procedure, we may choose "(1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions . . . ; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citation omitted); *see also Ford v. Commonwealth*, 628 S.W.3d 147, 153-55 (Ky. 2021). At our discretion, we will disregard the deficiency and proceed with the review.

that the mediation was a sham. As our Supreme Court explained in *Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846 (Ky. 2016), Kentucky has

> long endorsed a rule that "specific grounds not raised before the trial court, but raised for the first time on appeal will not support a favorable ruling on appeal." When a trial court never has the opportunity to rule on a legal question presented to an appellate court, an appellant presents a different case to the appellate court than the one decided by the trial court. Indeed, an appellate court is "without authority to review issues not raised in or decided by the trial court." The proper role for an appellate court is to review for error—and there can be no error when the issue has not been presented to the trial court for decision.

*Id.* at 852 (citations omitted). Appellants are not "permitted to feed one can of worms to the trial judge and another to the appellate court." *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976), *reh'g denied* (Jan. 14, 1977). Therefore, we will not consider this argument further.

Appellants next argue that the settlement agreement should be set aside because it was not the product of a voluntary, informed decision, but was obtained through "coercion, misrepresentation, improper mediation conduct, [and] inadequate counsel representation[.]" Specifically, they allege that both their attorney and the mediator told them that if they did not sign, the judge would be told they were being uncooperative. They also claim, "that they did not understand what they signed, that they signed a blank piece of paper, and that terms were added or changed after they signed."

"To create a valid, enforceable contract, there must be a voluntary, complete assent by the parties having capacity to contract." *Conners v. Eble*, 269 S.W.2d 716, 717-18 (Ky. 1954) (citation omitted). Further, a settlement agreement is subject to impeachment if procured by fraud, duress, or undue influence. 15A C.J.S. *Compromise & Settlement* §§ 62-63 (Apr. 2026 Update). Appellants fault the circuit court for not addressing their complaints concerning mediation, but the court did make specific findings that "the parties had a full and fair opportunity to participate in the mediation process, to be represented by counsel during that process, and that a meeting of the minds was reached in the end as to all material and essential settlement terms." It also held that the parties' attorneys had acted in good faith and in the parties' best interests.

Based on these findings, it appears the circuit court found Appellants' claims of coercion and impropriety not credible. While Appellants allege the mediation procedure was coercive and that they did not knowingly sign the Beginning Settlement Terms Outline, the only evidence they have put forth is their own self-serving statements. Other evidence suggests that the mediation procedure was proper and that the parties reached a valid settlement. Gena Gustin and John Hockensmith, Jr., spoke at the hearing and acknowledged signing the Beginning Settlement Terms Outline and the existence of an agreement. Neither raised any objection to the mediation process nor gave any indication that their assent to the

agreement was not knowing or voluntary. "A trial court, rather than an appellate court, is in the best position to weigh the evidence and the credibility of the witnesses." *First Nat'l Bank of Cincinnati, Ohio v. General Assembly Mission Bd. of Presbyterian Church in U.S., Inc.*, 610 S.W.2d 927, 929 (Ky. App. 1980). "[C]onsequently, this court will not substitute its judgment absent clear error." *Croft v. Croft*, 240 S.W.3d 651, 655 (Ky. App. 2007) (citations omitted). Here, the circuit court's findings were supported by substantial evidence. We find no error.

Finally, Appellants argue the final judgment must be set aside because it purports to be binding regarding proceedings over which it has no jurisdiction. Essentially, they argue that since the settlement agreement resolves a claim concerning partition of the Woodford County farm, and because KRS 452.400 requires actions for partition of real property to be brought in the county where the property is located, the Franklin Circuit Court lacks jurisdiction to enforce any settlement provision pertaining to that claim. Again, it does not appear that Appellants raised this issue with the circuit court. Therefore, it is not preserved for our review.

And while Appellants claim this issue is one of subject-matter jurisdiction, which can be raised at any time, it is really one of venue. *See Gillen v. Illinois Cent. R.R. Co.*, 137 Ky. 375, 125 S.W. 1047, 1050 (1910) (holding that Section 62 of the Civil Code of Practice (now KRS 452.400) does not pertain to

-9-

jurisdiction, but venue).  "[T]here are fundamental distinctions between the concepts of jurisdiction and venue, the former relating to the power of courts to adjudicate and the latter relating to the proper place for the claim to be heard." *Dollar General Stores, Ltd. v. Smith*, 237 S.W.3d 162, 166 (Ky. 2007).  And unlike subject matter jurisdiction, venue can be conferred by waiver.  *See Fritsch v. Caudill*, 146 S.W.3d 926, 927 (Ky. 2004).

## CONCLUSION

Accordingly, the Franklin Circuit Court's Final Judgment enforcing the parties' settlement agreement is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Jessica K. Winters
Lexington, Kentucky

BRIEF FOR APPELLEE KEVIN ANDREW HOCKENSMITH, INDIVIDUALLY AND IN HIS CAPACITY AS CO-EXECUTOR OF THE ESTATE OF MARY ANNE HOCKENSMITH, DECEASED:

William K. Moore
Versailles, Kentucky